IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEREMY SANGER,

          Plaintiff,

v.                                                            CIVIL ACTION NO. 2:23-cv-00069

BRANDON DODRILL, et al.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion to Dismiss* (Document 8), the *Defendants' Memorandum of Law in Support of Their Motion to Dismiss* (Document 9), the *Plaintiff's Response to Defendants' Motion to Dismiss* (Document 15), the *Defendants' Reply to Plaintiff's Response to Their Motion to Dismiss* (Document 16), all attached exhibits, and the Plaintiff's *Complaint* (Document 1). The Court has also reviewed the *Plaintiff's Motion for Leave to Accept Plaintiff's Previously Filed Response to Defendants' Motion to Dismiss Beyond the Standard Time Frame Contemplated by the Local Rule 17.1(a)(7)* (Document 17). For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

As an initial matter, the Court accepts the Plaintiff's response, filed one day after the applicable deadline. Plaintiff's counsel explains that the deadline was inadvertently calendared as March 29, 2023, rather than March 28, due to a clerical error. Although following deadlines is important to ensure the efficient processing of court cases and avoid prejudice, a minor error of this nature does not warrant striking the response.

## FACTUAL ALLEGATIONS

The Plaintiff, Jeremy Sanger, initiated this action with the *Complaint* (Document 1), filed on January 27, 2023. He named as Defendants Brandon Dodrill and Tyler Hogan, both officers in the Oak Hill Police Department, and the City of Oak Hill, West Virginia.

Defendant Dodrill was on patrol in Oak Hill on September 15, 2021. He observed Mr. Sanger riding a black and orange motorcycle on Jones Avenue. According to his report, Mr. Sanger was driving erratically, and at one point drove onto the sidewalk. Officer Dodrill attempted to stop Mr. Sanger by activating his emergency lights. Mr. Sanger did not pull over, and Officer Dodrill engaged in a high speed chase, reaching speeds in excess of 100 miles per hour. Officer Dodrill inaccurately described Mr. Sanger as a black male driver on a black sport bike. Mr. Sanger passed several vehicles, at times crossing double yellow lines. Officer Dodrill observed him nearly crash at one point. He continued the pursuit for approximately seven miles, even after dispatch for the Oak Hill Police Department ordered him to terminate the pursuit. The pursuit ended only after Mr. Sanger crashed his motorcycle into a ditch at the side of WV-61.

Officer Dodrill stopped his patrol car at the wreck site, where Mr. Sanger was lying unconscious in a ditch several feet away from the road. He called for EMS, then "improperly cut and removed Mr. Sanger's motorcycle helmet," and, with the help of Defendant Hogan and two bystanders, "dragged the unconscious Mr. Sanger, without any spinal immobilization, closer to the edge of the roadway and rolled him onto his back." (Compl. at ¶ 14.) Mr. Sanger regained consciousness and called for help, stating that his neck hurt. He indicated that he did not feel anything other than pain in his neck, "despite having severe and obvious injuries to his left arm and left leg." (*Id.* at ¶ 15.) The force used against Mr. Sanger in dragging him out of the ditch

caused and/or exacerbated his injuries. Mr. Sanger suffered severe, permanent injuries including a brain injury and a leg injury.

Officer Dodrill searched Mr. Sanger's wallet before EMS arrived, then Defendants Dodrill and Hogan searched his backpack, toiletry bag, and wallet while Mr. Sanger was being loaded into an ambulance. Officer Dodrill told fellow officers that Mr. Sanger had been indicted that day.[1] The Plaintiff suggests that the pursuit was motivated by the apparent mistaken identity.

The City of Oak Hill has a policy requiring officers to end pursuits if the risk to the safety of the officer or others outweighs the danger if the suspect is not apprehended. The policy also provides that officers are accountable for the manner in which they operate their police vehicles. The Plaintiff alleges that the City of Oak Hill provided inadequate hiring, training, supervision, and discipline of officers, including failing to require in-service training or retraining when officers "were known to have engaged in misconduct" and failing to discourage repeat constitutional violations. (Compl. at ¶ 52.) Further, the City failed to "properly interview, evaluate, and screen Defendants Dodrill and Hogan prior to hiring," failed to provide proper training, including training related to vehicular pursuit and administering aid to injured persons, failed to properly monitor and supervise Defendants Dodrill and Hogan, negligently retained Defendants Dodrill and Hogan, failed to adopt appropriate policies, and implemented customs, policies, and procedures that condoned, encouraged, or demonstrated indifference to the use of excessive force. (*Id.* at ¶ 56.)

The Plaintiff asserts the following causes of action: Count One: Gross Negligence/Reckless Disregard in Operation of a Motor Vehicle, as to Defendants Dodrill and City of Oak Hill; Count

---

[1] The Plaintiff alleges that Officer Dodrill was mistaken in indicating that he had been indicted. In his response brief, he concedes that he was indicted that day on two counts of possession of a controlled substance with intent to deliver, though he was unaware of the indictment at the time.

Two: Deprivation of Rights in Violation of 42 U.S.C. § 1983, as to Defendant Dodrill; Count Three: Assault and Battery, as to Defendant Dodrill; Count Four: Reckless Conduct in Violation of Clearly Established Laws, as to the City of Oak Hill; Count Five: Deprivation of Rights in Violation of 42 U.S.C. § 1983, as to Defendant Hogan; and Count Six: Deprivation of Rights in Violation of 42 U.S.C. § 1983, as to all Defendants.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual

4

inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

The Defendants argue that the state law claims contained in Counts One, Three, and Four are barred by W.Va. Code § 55-7-13d(c) because the damages arose out of Mr. Sanger's felony fleeing. They additionally argue that Count One must be dismissed against the City of Oak Hill,

5

because state law provides that political subdivisions are immune from claims of negligence resulting from the method of providing police or law enforcement protection. They also contend that the Plaintiff failed to state a *Monell* claim against the City of Oak Hill in Count Six because the complaint does not contain sufficient allegations to establish a policy or custom of the City led to the alleged damages. The Defendants further argue that the § 1983 claims are not viable because the Plaintiff was not seized by the Defendants and the Defendants did not use force on the Plaintiff. They cite Supreme Court precedent suggesting that there is no seizure when a suspect crashes during a police chase. The Defendants next contend that the Count Five bystander liability claim as to Defendant Hogan must be dismissed because the complaint does not contain factual allegations that the Plaintiff's constitutional rights were violated or that Officer Hogan observed any such violation. They argue that the complaint as a whole relies on conclusory allegations and cannot satisfy the applicable pleading standard. Furthermore, they assert that they are entitled to qualified immunity for claims brought pursuant to § 1983, noting that a magistrate found probable cause that the Plaintiff had committed the offense of fleeing. Finally, they contend that the Plaintiff "was not in custody and, therefore, had no right to any medical care contemplated under the 4th, 8th, or 14th Amendments." (Def.s' Reply at 9.)

The Plaintiff emphasizes that Officer Dodrill "initiated and continued a high-speed chase of a motorcyclist who was hot-rodding down the street of the City of Oak Hill," in violation of policy and a specific directive to end the pursuit. (Resp. at 8.) He argues that W. Va. Code §55-7-13d does not apply because he has not been convicted of a felony. The Plaintiff withdraws Count One as to the City of Oak Hill but argues that his claim in Count Four as to Oak Hill is viable because it contains sufficient allegations that the City of Oak Hill permitted unconstitutional

6

behavior. The Plaintiff further argues that the high speed chase, terminating with his crash, constitutes a seizure. He argues that the bystander liability claim as to Defendant Hogan is clearly pled, based on her decision to assist, rather than prevent, Defendant Dodrill in moving the Plaintiff. In addition, the Plaintiff argues that Defendants Dodrill and Hogan are not entitled to qualified immunity because their actions were not reasonable and the rights at issue were clearly established.

### A. State Law Claims

West Virginia law provides that a person may not recover damages in a civil action if "such damages arise out of the person's commission, attempted commission, or immediate flight from the commission of a felony; and that the person's damages were suffered as a proximate result of the commission…of a felony." W. Va. Code § 55-7-13d(c). "The burden of alleging and proving the defense set forth in subsection (c) of this section shall be upon the person who seeks to assert such a defense." *Id.* at § 55-7-13d(d). The felony invoked by the Defendants is felony fleeing in violation of W. Va. Code § 61-5-17(f). That statute provides as follows:

> A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer, probation officer, or parole officer acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony.

W. Va. Code § 61-5-17(f).

The Plaintiff relies in part on a prior decision from this district, in which Judge Goodwin explained that "While Plaintiff has been charged with this offense, there has been no conviction. And it is Defendants' burden to prove that Plaintiff was committing a felony and that the felony was the cause of his injuries." *Means v. Peterson*, No. 2:20-CV-00561, 2020 WL 6702036, at *3 (S.D.W. Va. Nov. 13, 2020) (Goodwin, J.) In *Means*, the plaintiff alleged that the officer did not

activate his lights or siren to initiate a traffic stop. Here, the facts establishing the defense pursuant to § 55-7-13d(c) are apparent from the face of the complaint:[2] Mr. Sanger alleges that "Defendant Dodrill activated his emergency lights and gave chase to Mr. Sanger" after observing him driving recklessly. (Compl. at ¶ 9.) He alleges that the chase reached speeds in excess of 100 miles per hour, that Mr. Sanger nearly lost control on multiple occasions prior to his crash, that he passed multiple vehicles, including in curves and across double yellow lines, and that there was a "clear danger presented to Mr. Sanger and the public" as a result of the high-speed chase. (*Id.* at ¶ 11.)

It is rare for dismissal to be appropriate on a defense for which the defendant bears the burden of proof, but in this case, there is no reasonable interpretation of the facts alleged that would fail to establish the applicability of § 55-7-13d(c). The core elements of felony fleeing are integral to Mr. Sanger's complaint. He claims that he crashed his motorcycle because Defendant Dodrill engaged in a pursuit when he fled a traffic stop, and that pursuit violated police department policy because it was dangerous. The facts alleged in the complaint, in contrast to *Means*, establish that Mr. Sanger intentionally fled and operated his motorcycle in a manner showing a reckless indifference to the safety of others during his flight. The complaint also establishes that the crash and Mr. Sanger's injuries were proximately caused by his flight and Officer Dodrill's pursuit. Therefore, the Court finds that state law claims are barred by W. Va. Code §55-7-13d(c), and Counts One, Three, and Four must be dismissed to the extent they are brought under state law.

---

2 The Defendants argued that the Court should rely on the probable cause finding and arrest warrant for felony fleeing. A magistrate's issuance of an arrest warrant cannot establish the underlying facts for purposes of a motion to dismiss. Therefore, the Court has given consideration only to the facts as alleged in the complaint.

### B. 42 U.S.C. § 1983 Claims

The Defendants assert qualified immunity. Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

The Plaintiff alleges that he was subject to unreasonable seizure when Defendant Dodrill engaged in a high speed pursuit that ended with his motorcycle crash, and to unreasonable seizure, unlawful detention, excessive force, battery, improper medical treatment, and negligence when Defendant Dodrill, assisted and observed by Defendant Hogan, pulled him from a ditch immediately after the crash.

The Supreme Court has provided detailed analysis of the circumstances in which a Fourth Amendment seizure occurs, holding that a seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). In *Brower*, the Court held that there was a seizure where law enforcement erected a roadblock crossing both lanes of a highway as a suspect was involved in a car chase. *Id.* at 598. The suspect died when he crashed into the roadblock. *Id.* The Court reasoned that a roadblock "is designed to produce a stop by physical impact if voluntary compliance does not occur," and thus involved a governmental termination of freedom of movement. *Id.* The Court specifically contrasted the seizure in the facts presented from a hypothetical situation in which no seizure could be found, where a fleeing motorist was stopped by "his loss of control of his vehicle and the subsequent crash" but the "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit." *Id.*

Mr. Sanger does not allege that the Defendants erected a blockade, made physical contact with his motorcycle, or created the ditch into which he crashed.[3] The Supreme Court has

---

3 The Plaintiff focuses, in part, on allegations that Defendant Dodrill's pursuit violated both departmental policy and a directive to end the chase. Such policies and directives may have some relevance in a § 1983 case, but policies enacted by police departments do not define the contours of constitutional law.

10

explained that the precise situation described in the complaint—a driver losing control and crashing during a high speed chase—does not constitute a seizure. Thus, Defendant Dodrill cannot be liable for the crash, given that there are no factual allegations that would permit a finding that Mr. Sanger's free movement was terminated by means intentionally applied.

There is likewise no allegation that Mr. Sanger was seized or placed in custody after the crash. He instead alleges, on a legal theory that is not entirely clear, that Defendants Dodrill and Hogan violated his rights "to be free from battery, improper medical treatment, and negligent actions that caused and/or exacerbated the injuries received when the motorcycle wreck occurred." (Compl. at ¶ 70.) To the extent any Fourth Amendment right is implicated, the factual allegations, drawing all reasonable inferences in favor of the Plaintiff, do not support a finding that the Defendants acted in a constitutionally unreasonable manner, and their actions in attempting to provide first aid following the crash are protected by qualified immunity.

There is no clearly established precedent establishing that officers must refrain from moving an injured person prior to arrival of first responders with more medical training. Even if the Plaintiff could specify a clearly established constitutional right at issue, qualified immunity would protect their "reasonable but mistaken judgment" about how best to assist Mr. Sanger while awaiting the arrival of EMS. *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). The Plaintiff alleges that Defendant Dodrill was aware that he had "sustained serious and life-threatening injuries." (Compl. at ¶ 48.) His injuries include "a massive brain injury that is expected to cause lifelong neurological complications, and a crippling leg injury that to date has required more than ten surgical procedures." (*Id.* at ¶ 45.) After "Defendant Dodrill, with the assistance of Defendant

Hogan and two bystanders, dragged the unconscious Mr. Sanger, without any spinal immobilization, closer to the edge of the roadway and rolled him onto his back," Mr. Sanger complained of severe neck pain "despite having severe and obvious injuries to his left arm and leg." (*Id.* at ¶¶ 14–15.) The Plaintiff contends that his injuries were exacerbated because he was moved before the arrival of EMS. The Court cannot find that the Constitution requires officers arriving on the scene immediately after a severe motorcycle accident to guess correctly about whether it is better to avoid moving the victim to avoid exacerbating any spinal injuries or pull him to a safer location to assess his injuries and apply any available first aid to the "obvious and severe" arm and leg injuries.

Because the allegations in the complaint do not state a claim as to any constitutional violation, the federal claims pursuant to 42 U.S.C. § 1983 must be dismissed. The claim for municipal liability cannot survive without an underlying constitutional violation. Without any viable § 1983 claim as to Defendant Dodrill, the bystander liability claim as to Defendant Hogan likewise fails.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Leave to Accept Plaintiff's Previously Filed Response to Defendants' Motion to Dismiss Beyond the Standard Time Frame Contemplated by the Local Rule 17.1(a)(7)* (Document 17) be **GRANTED**. The Court further **ORDERS** that the *Defendants' Motion to Dismiss* (Document 8) be **GRANTED** and that this matter be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 5, 2023

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA